MORGAN, LEWIS & BOCKIUS LLP
John S. Battenfeld, Bar No. 119513
john.battenfeld@morganlewis.com
Tuyet T. Nguyen Lu, Bar No. 256431
tuyet.nguyen@morganlewis.com
Daniel R. Rodriguez, Bar No. 323955
daniel.rodriguez@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: +1.213.612.2500
Fax: +1.213.612.2501

Attorneys for Defendant
TESLA ENERGY OPERATIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL KIRK POLSON, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

TESLA ENERGY OPERATIONS, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.

**DEFENDANT TESLA ENERGY OPERATIONS, INC.'S NOTICE OF REMOVAL**

[28 U.S.C. §§ 1332, 1441, 1446, and 1453]

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TESLA'S NOTICE OF REMOVAL
Case No.

DB2/ 43099173.3

**TO THE CLERK OF THE NORTHERN DISTRICT OF CALIFORNIA AND PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant TESLA ENERGY OPERATIONS, INC. ("Defendant" or "Tesla"), by and through its counsel, removes the above-entitled action to this Court from the Superior Court of the State of California, County of Contra Costa, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. This removal is based on the following grounds:

## I. PROCEDURAL BACKGROUND.

1. On March 4, 2022, Plaintiff Paul Kirk Polson ("Plaintiff") filed a class action complaint ("Complaint") in the Superior Court of the State of California, County of Contra Costa, entitled *Paul Kirk Polson, on behalf of himself and all others similarly situated v. Tesla Energy Operations, Inc., a Delaware corporation; and DOES 1 through 50, inclusive*, Case No. C22-04412 (the "Complaint").

2. On April 1, 2022, Plaintiff served copies of the Summons, Complaint, Civil Cover Sheet, and Notice of Assignment on the registered agent for Tesla. True and correct copies of these documents are attached hereto as **Exhibit A**. Exhibit A constitutes all the pleadings, process, and orders served upon or filed by Tesla in the Superior Court action.

3. The Complaint seeks damages and penalties on behalf of a putative class for: (1) failure to pay lawful wages; (2) failure to provide lawful meal periods or compensation in lieu thereof; (3) failure to indemnify necessary business expenses; (4) failure to timely pay wages during employment; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; and (7) violations of the Unfair Competition Law. (Ex. A, Compl. ¶¶ 31-65).

4. Plaintiff alleges all Causes of Action individually and on behalf of a putative class of current and former employees. Plaintiff seeks to represent a class defined as "All employees who are or were employed by TESLA in the state of

California as hourly non-exempt employees within four (4) years prior to the date this lawsuit is filed ("liability period") until resolution of this lawsuit." (Ex. A, Compl. ¶ 20).

## II. REMOVAL IS TIMELY.

5. Because Tesla is filing this Notice of Removal within thirty days of service of the Complaint, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THE COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.

6. The Complaint is a putative class action.[1] (Ex. A, Compl., ¶ 1, Prayer for Relief ¶ 1). Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Tesla, (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the FAC places in controversy more than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453.[2] Although Tesla denies Plaintiff's factual allegations and denies that Plaintiff—or the class or classes he purports to represent—is entitled to the relief requested, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.

---

[1] Tesla denies, and reserves the right to contest at the appropriate time, that this action can properly proceed as a class action. Tesla further denies Plaintiff's claims and denies that he can recover any damages.

[2] Tesla denies Plaintiff's factual allegations and denies that Plaintiff and members of the putative class are entitled to any relief whatsoever.

**A. Complete Diversity of Citizenship Exists Between the Parties.**

7. To satisfy CAFA's diversity requirement, a removing party seeking removal must establish only that minimal diversity exists, that is, that one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

8. For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

9. In his Complaint, Plaintiff alleges that he was employed by Tesla in California and that he "is and at all times mentioned in this complaint was, a resident of Contra Costa County, California." (Ex. A, FAC ¶ 1, 8). The Complaint does not allege that Plaintiff is a citizen of any other state. Therefore, Plaintiff is a citizen of California for purposes of diversity jurisdiction. Moreover, Plaintiff has brought claims on behalf of putative class members, some of whom are currently employed in California. (Exh. A, Compl. ¶ 20). Thus, Plaintiff and some putative class members are citizens of California for diversity jurisdiction purposes.

10. For CAFA diversity purposes, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers

to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

11. Defendant Tesla Energy Operations, Inc., is a corporation organized under the laws of the State of Delaware. *See* Ex. A, Compl., ¶ 9. Its principal place of business and corporate headquarters are in Austin, Texas, where its officers direct, control, and coordinate corporate activities.

12. As a result, Defendant is now, and was at the time of the filing of this action, a citizen of the States of Texas and Delaware within the meaning of the Acts of Congress relating to the removal of this action.

13. Therefore, diversity of citizenship exists under CAFA because at least one member of the putative class is a citizen of a state different than Tesla. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

**B. <u>The Putative Class Has More Than 100 Members</u>.**

14. Plaintiff worked for Tesla in a non-exempt capacity as a Roofer III installing solar products. The Complaint alleges its claims on behalf of a class defined as "All employees who are or were employed by TESLA in the state of California as hourly non-exempt employees within four (4) years prior to the date this lawsuit is filed ('liability period') until resolution of this lawsuit." (Ex. A, Compl. ¶ 20). Although the complaint uses this broad definition, its allegations refer to alleged duties like those performed by Plaintiff. Based on available data, Tesla is informed and believes that it employed at least 3,694 non-exempt, full-time employees in solar installation-related positions in California during the year

preceding the Complaint's filing. Tesla is further informed and believes from available data that at least 1,295 of these employees separated from Tesla between March 4, 2019 through March 4, 2022. Thus, the putative class contains more than 100 members.

**C. <u>The Amount In Controversy Exceeds $5,000,000</u>.** [3]

15. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiff does not expressly plead a specific amount of class damages, Tesla need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Tesla's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554; *see also Jauregui v. Roadrunner Transportation Services, Inc.*, 2022 WL 804148, at *4 (9th Cir. Mar. 17, 2022) (reversing district court's remand to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating

[3] This Notice of Removal addresses the nature and amount of damages that the FAC places in controversy. Tesla refers to specific damages estimates and cites to comparable cases solely to establish that the amount in controversy exceeds the jurisdictional minimum. Tesla maintains that each of Plaintiff's claims lack merit, and that Tesla is not liable to Plaintiff or any putative class member in any amount whatsoever. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the FAC or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In addition, Tesla denies that this case is suitable for class treatment.

the amount in controversy" for purposes of CAFA removal, and concluding that "[the defendant's] assumptions regarding the number of affected class members and the violation rate were reasonable for the various relevant claims.")

16. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28, 2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount a complaint places "in controversy," not what a defendant may actually owe in damages. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy"). *See also Jauregui*, at *4 ("At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy. This is also at a stage of the litigation before any of the disputes over key facts have been resolved.")

17. Under *Dart Cherokee*, a removing defendant is not required to submit evidence supporting its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal **need not contain evidentiary submissions** but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'"

*Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019)). Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id.* at *3. As detailed below, Tesla plausibly alleges that the amount in controversy exceeds $5 million based on Plaintiff's sweeping allegations, and that the Court has jurisdiction pursuant to CAFA. When the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5 million in potential damages. 28 U.S.C. § 1332(d)(2).

18. Although Tesla denies Plaintiff's factual allegations and denies that he or the class or subclasses he seeks to represent are entitled to the relief for which he has prayed, Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[4]

19. As explained above, Plaintiff seeks to represent a putative class of more than 3,694 members. Tesla has reviewed certain data concerning the putative class that Plaintiff seeks to represent. Based on the allegations in the Complaint,

[4] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Tesla's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Tesla maintains that each of Plaintiff's claims is without merit and that Tesla is not liable to Plaintiff or any putative class member. Tesla expressly denies that Plaintiff or any putative class member is entitled to recover any of the penalties sought in the Complaint. In addition, Tesla denies that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Tesla's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

Plaintiff has put more than $5 million in controversy as set forth below, and CAFA removal is appropriate.

**1. Plaintiff's First Cause of Action for Overtime and Minimum Wages Put at Least $2,433,097.50 in Controversy.**

20. The Complaint alleges that Tesla "implemented policies and practices which resulted in Plaintiff and Non Exempt Employees working off the clock and without compensation." (Ex. A, Compl. ¶¶ 13). Plaintiff alleges that he and the alleged class members "were required to attend safety meetings prior to clocking in to begin work" and "to undergo numerous hours of training off the clock." *Id.* Plaintiff alleges such uncompensated work caused him and others to work in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek without proper compensation for such overtime work. (Ex. A, Compl., ¶¶ 13, 31-33).

20. Labor Code section 510 requires that any work "in excess of eight hours in one workday" must be compensated "at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). Labor Code section 1194 requires that any employee "receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation…" Cal. Lab. Code § 1194. The complaint seeks these damages on behalf of "Plaintiff and the Class he seeks to represent…" (Ex. A, Compl., ¶ 34).

21. Tesla's review of available data indicates at least 122,420 total weeks worked from March 4, 2018 through March 31, 2022 by non-exempt solar installation employees of Tesla in California. Tesla is informed and believes that the normal shift length for these employees is 8 hours, and that the average hourly wage for this group is $26.50.

22. The Ninth Circuit has held that for calculating the amount in controversy for a minimum wage claim, an assumption of one hour of unpaid work

per workweek is reasonable. *Jauregui*, at *5. Here, using an even more conservative assumption that Plaintiff is alleging that putative Class Members are on average due 30 minutes of unpaid overtime per week for alleged daily pre-shift safety meetings and "numerous hours of training" that they allegedly worked off the clock, and using the average hourly rate of $26.50 for the 3,694 employees at issue here, Plaintiff's first cause of action places at least $2,433,097.50 in controversy: $26.50 per hour x 1.5 x 0.5 hours x 122,420 work weeks = **$2,433,097.50**.

**2. Plaintiff's Second Cause of Action for Failure to Provide Meal Periods Places at Least $2,773,839.80 in Controversy.**

20. Plaintiff alleges that "During the liability period, due to the work load requirements and time constraints imposed by Defendant during each shift, Plaintiff and Class Members were required to work in excess of five (5) hours without a minimum, uninterrupted thirty (30) minute meal period and were not compensated one (1) hour of pay at their regular rate of compensation for each workday that a compliant meal period was not provided..." (Exh. A, Compl. ¶ 14). Plaintiff further alleges that his "meal periods were interrupted and, in some circumstances, taken after working at least five hours due to the requirements of the roofing project he was working on at that time." (*Id*).

21. Labor Code § 512(a) states that non-exempt employees must be provided an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours. Labor Code § 226.7(b) states that if an employer fails to provide an employee a meal or rest period in accordance with state law, the employer shall pay the employee one additional hour of pay for each workday that the meal or rest period is not provided. The Complaint alleges that Tesla failed to pay Plaintiff and Class Members this additional hour of pay when required meal periods were not provided. (Exh. A, Compl., ¶¶ 14).

22. Tesla's review of data showed at least 523,366 shifts worked from

March 4, 2018 through March 31, 2022 by non-exempt solar installation employees of Tesla in California. Tesla is informed and believes that such employees' work days generally consisted of more than five hours per day.

23. For purposes of assessing the amount in controversy, Plaintiff's allegations support a 100% violation rate with respect to claims of unprovided meal periods. *Muniz v. Pilot Travel Centers LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (where plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, defendant may use 100% violation rate in calculating the amount in controversy). Nevertheless, Tesla uses only a conservative assumption that Plaintiff's allegations place damages in controversy based on an average of one alleged unprovided meal period for every five shifts worked per employee. Therefore, using the average hourly rate of $26.50 for each allegedly similarly situated employee, the first cause of action places at least $2,773,839.80 in controversy: 523,366 total shifts worked in excess of five hours x 0.2 x $26.50 per hour = **$2,773,839.80**.

**3. Plaintiff's Fourth Cause of Action for Failure to Reimburse Employee Expenses Puts at Least $791,075 in Controversy.**

24. Plaintiff alleges that Tesla "required Plaintiff and Non-Exempt employees to use their personal cell phones to download and view roof schematics, to communicate with supervisors and employees, to clock in and out, and to keep track of working hours and scheduling. Furthermore, Defendant required Plaintiff and Non-Exempt employees to use their personal home computers and personal home internet services to download or stream training videos." (Ex. A, FAC ¶ 17). The FAC does not allege the amounts sought for these expenses, but Plaintiff alleges that he and the Class "were not reimbursed for these expenses." (*Id.*).

25. Plaintiff's allegations of "policies and practices" causing a failure to provide reimbursement of cell phone, personal computer, and home internet expenses to putative class members permits Tesla to reasonably assume for

purposes of removal "that each putative class member could recover unreimbursed expenses for every month worked." *Anderson v. Starbucks Corp.*, No. 3:20-CV-01178-JD, 2020 WL 7779015, at *4 (N.D. Cal. Dec. 31, 2020). In *Anderson*, the district court held that a monthly cell phone reimbursement of $32.50 per employee was a "reasonable basis for estimating" the amount in controversy on a cell phone reimbursement claim, and conservatively represents a recovery that would be "less than a full recovery of the monthly plan fee . . . ." *Id.* For purposes of this removal, Tesla uses an even more conservative assumption that Plaintiff is seeking an average monthly recovery of $25.00 per employee for all three types of expenses claimed (cell phone, personal computer, and home internet).

26. Here, Tesla is informed and believes that there are 31,643 months worked by full-time non-exempt employees in solar installation-related positions in California during the time period in question. Assuming $25.00 in alleged unpaid reimbursements per month, Plaintiff's fourth cause of action for failure to indemnify employees for necessary expenses places at least $791,075 in controversy: $25 monthly expenses x 31,643 work months = **$791,075**.

#### 4. Plaintiff's Fifth Cause of Action for Failure to Pay All Wages Due at Termination Places at Least $8,236,200 in Controversy.

27. Plaintiff alleges that "More than 30 days have passed since Plaintiff and affected Class Members have left Defendant's employ, and on information and belief, have not received payment pursuant to Labor Code § 203." (Exh. A, Compl. ¶ 52). Plaintiff further alleges that, "As a consequence of Defendant's willful conduct in not paying all earned wages, certain Class Members are entitled to 30 days' wages as a penalty under Labor Code section 203 for failure to pay legal wages. (*Id.*)

28. Labor Code § 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "the wages of the employee . . . from the due date thereof . . . until paid

or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

27. During the three-year statute of limitations period applicable to a Section 203 claim, Tesla is informed and believes that at least 1,295 full-time non-exempt employees in solar installation-related positions in California separated their employment with Tesla more than 30 days before the Complaint was filed. The Complaint alleges that all overtime and minimum wages and "compensation for non-provided rest and meal periods" earned have not been received by class members who are no longer employed by Tesla, and indeed it seeks those alleged wages and premiums as damages as to all putative class members. (Ex. A, Compl., ¶ 51). Based on Plaintiff's allegations, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."). *See also Jauregui*, 2022 WL 804148, at *4 ("But it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty.") (emphasis in original).

29. Using the average hourly rate of $26.50 per hour, the Complaint puts in controversy Labor Code Section 203 waiting time penalties of $6,360 per terminated employee ($26.50 x 8 hours per day x 30 days), or at least **$8,236,200** in the aggregate ($6,360 x 1,295 employees).

**5. Plaintiff's Seventh Cause of Action for Failure to Furnish Accurate Itemized Wage Statements Puts at Least $6,831,150 in Controversy.**

31. Plaintiff alleges that Tesla "failed to maintain accurate itemized

records reflecting total hours worked and have failed to provide Non Exempt Employees with accurate, itemized wage statements reflecting total hours worked and appropriate rates of pay for those hours worked." (Ex. A, Compl. ¶¶ 16). Because Plaintiff alleges that Tesla violated Labor Code Section 226(a)(8) by "failing to accurately report total hours worked by Plaintiff and the proposed class," failing to "show all deductions and reimbursements from payment of wages," and other alleged violations, it is appropriate to use a 100% violation rate to calculate the amount in controversy for this claim.

32. Labor Code section 226(e) provides that an employee can recover the greater of all actual damages or $50 for the initial violation and $100 per pay period for each subsequent violation, up to a maximum penalty of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Labor Code § 226(e).

33. Here, during the relevant one-year statute of limitations period, Tesla provided wage statements to Plaintiff and to putative class members on a weekly basis. During the period of March 4, 2021 to March 31, 2022, Tesla is informed and believes that it issued weekly wage statements to at least 2,618 full-time non-exempt employees in solar installation-related positions in California during the one-year limitations period applicable to this claim. Of these employees, Tesla is informed and believes that 1,071 of them worked 41 or more weeks as of March 31, 2022, which would place the maximum $4,000 penalty in controversy for each of them, totalling $4,284,000. Tesla is further informed and believes that Tesla issued approximately 26,243 wage statements to the other 1,543 full-time non-exempt employees in solar installation-related positions in California who worked fewer than 41 weeks during the above period. Thus, Plaintiff's seventh cause of action for failure to provide accurate wage statements puts $6,831,150 in controversy for this claim: (1,543 employees during the applicable period x $50 penalty for initial

pay period) + (24,700 subsequent pay periods x $100 penalty) + (1,071 employees x $4,000 maximum penalty) = total claimed penalties of **$6,831,150**.

**6. The Amount in Controversy Exceeds $5 Million.**

34. Aggregating the figures above for these causes of action, Plaintiff's alleged amount in controversy is at least $21,065,362.30 ($2,433,097.50 + $2,773,839.80 + $791,075+ $8,236,200 + $6,831,150) based on the allegations in the claims discussed above. Thus, the CAFA $5 million requirement is satisfied based on these claims alone, even without the need to assess the value of Plaintiff's Fourth Cause of Action (failure timely pay wages during employment), or to value Plaintiff's claim for failure to "pay Plaintiff and Non-Exempt employees their regular rate of pay when Plaintiff and Non-Exempt employees worked overtime hours and received non-discretionary bonus earnings." (Ex. A, Compl., ¶ 15).

**7. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.**

35. Plaintiff seeks to recover attorneys' fees under various provisions of the Labor Code, including section 226. (Ex. A, Compl. ¶¶ 5, 34, 43; Prayer for Relief, ¶6). Future attorneys' fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson*, 2020 WL 7779015, at *4.

36. Although Tesla denies Plaintiff's claim for attorneys' fees, inclusion of "reasonable" attorneys' fees for purposes of removal adds another $5,266,340.58 in controversy (25% of $21,065,362.30), bringing the total amount in controversy to at least **<u>$26,331,702.88</u>**.

37. Therefore, although Tesla has plausibly alleged that the amount in controversy without attorneys' fees exceeds $5,000,000, the inclusion of attorneys' fees as allowed by Ninth Circuit law further increases the amount in controversy above the minimum threshold for CAFA jurisdiction.

**IV. VENUE**

38. This action was originally filed in the Superior Court for the County of Contra Costa. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

**V. NOTICE**

39. Tesla will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

**VI. CONCLUSION**

40. Based on the foregoing, Tesla requests that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Tesla respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: May 2, 2022

MORGAN, LEWIS & BOCKIUS LLP

By *\/s/ John S. Battenfeld*

John S. Battenfeld
Tuyet T. Nguyen Lu
Daniel R. Rodriguez
Attorneys for Defendant
TESLA ENERGY OPERATIONS, INC.

# EXHIBIT A

 **Service of Process Transmittal**
04/01/2022
CT Log Number 541334117

**TO:** LEGAL DEPARTMENT - SOP
TESLA, INC.
901 PAGE AVE
FREMONT, CA 94538-7341

**RE: Process Served in California**

**FOR:** Tesla Energy Operations, Inc (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Paul Kirk Polson on behalf of himself and all others similarly situated // To: Tesla Energy Operations, Inc |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Cover Sheet, Attachment, Notice |
| **COURT/AGENCY:** | Contra Costa County - Superior Court - Martinez, CA<br>Case # C2200412 |
| **NATURE OF ACTION:** | Employee Litigation - Class action - Complaint regarding failure to pay lawful wages<br>(Refer document for additional information) |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, GLENDALE, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/01/2022 at 12:56 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days after this summons and legal papers are served on you<br>(Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Kacey E. Cook, Esq.<br>James Hawkins APLC<br>9880 Research Drive, Suite 200<br>Irvine, CA 92618<br>949-387-7200 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/01/2022, Expected Purge Date: 04/06/2022<br><br>Image SOP<br><br>Email Notification, LEGAL DEPARTMENT - SOP legalsop@tesla.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

 **Service of Process Transmittal**
04/01/2022
CT Log Number 541334117

**TO:** LEGAL DEPARTMENT - SOP
TESLA, INC.
901 PAGE AVE
FREMONT, CA 94538-7341

**RE:** **Process Served in California**

**FOR:** Tesla Energy Operations, Inc (Domestic State: DE)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:** Fri, Apr 1, 2022
**Server Name:** Douglas Forrest

| | |
|---|---|
| Entity Served | TESLA ENERGY OPERATIONS, INC. |
| Case Number | C2200412 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

FILED
2022 MAR -4 A 10: 46
KATE BIEKER
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA CA
BY: C. JACALA, DEPUTY CLERK

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
TESLA ENERGY OPERATIONS, INC., a Delaware corporation; and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
PAUL KIRK POLSON on behalf of himself and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Wakefield Taylor Courthouse
725 Court Street
Martinez, CA 94553

CASE NUMBER: *(Número del Caso):* C22-00412

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James Hawkins APLC 9880 Research Dr., Suite 200, Irvine, CA 92618; 949-387-7200

DATE: MAR 4 2022
*(Fecha)*

Clerk, by C. A. JACALA, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of (specify): Tesla Energy Operations Inc a Delaware corporation

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☒ by personal delivery on *(date)*

COPY

James R. Hawkins, Esq. SBN 192925
Isandra Fernandez, Esq. SBN 220482
Kacey E. Cook, Esq. SBN 337905
**JAMES HAWKINS APLC**
9880 Research Drive, Suite 200
Irvine, CA 92618
TEL: (949) 387-7200
FAX: (949) 387-6676

FILED
2022 MAR -4 A 10:45
KATE BIEKER
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA
BY: C. JACALA, DEPUTY CLERK

Attorneys for Plaintiff, PAUL KIRK POLSON on behalf of himself and all others similarly situated

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF CONTRA COSTA

PAUL KIRK POLSON on behalf of himself and all others similarly situated

Plaintiff,

vs.

TESLA ENERGY OPERATIONS, INC., a Delaware corporation; and DOES 1 through 50, inclusive;

Defendant.

PER LOCAL RULE, THIS CASE IS ASSIGNED TO DEPT 39 FOR ALL PURPOSES

Case No. C22-00412
ASSIGNED FOR ALL PURPOSES TO:
JUDGE:
DEPT:

**CLASS ACTION COMPLAINT**

1) **Failure to Pay Lawful Wages**
2) **Failure to Provide Lawful Meal Periods or Compensation in Lieu Thereof**
3) **Failure to Reimburse Employee Expenses**
4) **Failure to Timely Pay Wages During Employment**
5) **Failure to Timely Pay Wages at Termination**
6) **Failure to Provide Accurate, Itemized Wage Statements**
7) **Violations of the Unfair Competition Law**

**JURY TRIAL DEMANDED**

COPY

Plaintiff PAUL KIRK POLSON on behalf of himself and all others similarly situated assert claims against Defendant TESLA ENERGY OPERATIONS, INC., and DOES 1 through 50, inclusive (hereinafter collectively referred to as "Defendant") as follows:

**I.**

**INTRODUCTION**

1. This is a Class Action, pursuant to Code of Civil Procedure section 382, brought against Defendant TESLA ENERGY OPERATIONS, INC. and any subsidiaries and affiliated companies (hereinafter "TESLA" or "Defendant") on behalf of Plaintiff PAUL KIRK POLSON (hereinafter "Plaintiff") and all employees not classified as "Exempt" or primarily employed in executive, professional, or administrative capacities, employed by, or formerly employed by TESLA in California. (hereinafter referred to as "Non-Exempt Employees" and/or "Class Members").

2. During the liability period, defined as the applicable statute of limitations for each and every cause of action contained herein, Defendant enforced shift schedules, employment policies and practices, and workload requirements wherein Plaintiff and all other Non-Exempt Employees: (1) were not paid proper wages they earned for all hours they worked including proper minimum and overtime compensation; (2) were not permitted to take their full statutorily authorized meal periods, or had their meal periods shortened or provided to them late due to the scheduling and work load and time requirements placed upon them by Defendant. Defendant failed to pay such employees one (1) hour of pay at the employees regular rate of compensation for each workday that the meal period that was not properly provided; and employees were not properly reimbursed for out-of-pocket expenses.

3. During the liability period, Defendant have failed to reimburse Class Members for business expenses incurred in the performance of their job duties.

4. During the liability period, Defendant have also failed to maintain accurate itemized records reflecting total hours worked and have failed to provide Non Exempt Employees with accurate, itemized wage statements reflecting total hours worked and appropriate rates of pay for those hours worked.

5. Plaintiff, on behalf of himself and all Class Members, brings this action pursuant to Labor Code sections 201, 202, 203, 204, 210, 221, 225, 226, 226.7, 510, 512, 1194, 1198, 1199, 2802, California Code of Regulations, Title 8, section 11160 *et seq*. and any other applicable Industrial Welfare Commission ("IWC") Wage Orders, seeking unpaid lawful wages, unpaid meal period compensation, penalties and other equitable relief, and reasonable attorneys' fees and costs.

6. Plaintiff, on behalf of himself and others similarly situated, pursuant to Business and Professions Code sections 17200-17208, also seeks restitution from Defendant for their failure to pay all overtime wages and rest and meal period premiums to each of their Non-Exempt Employees.

**II.**

**VENUE**

7. Venue as to each Defendant is proper in this judicial district pursuant to Code of Civil Procedure section 395. Defendant conducts substantial and continuous commercial activities in Contra Costa County, California and each Defendant is within the jurisdiction of this Court for service of process purposes. Defendant employ numerous Class Members in Contra Costa County, California.

**III.**

**PARTIES**

8. Plaintiff is, and at all times mentioned in this complaint was, a resident of Contra Costa County, California.

9. Defendant TESLA is a Delaware corporation which is headquartered in Palo Alto, California.

10. The true names and capacities of Defendant, whether individual, corporate, associate, or otherwise, sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendant by such fictitious names under Code of Civil Procedure section 474. Plaintiff is informed and believes, and based thereon alleges that each of the Defendant designated herein as a DOE is legally responsible in some manner for the unlawful

acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendant designated hereinafter as DOES when such identities become known.

11. Plaintiff is informed and believes, and based thereon alleges, that Defendant acted in all respects pertinent to this action as the agent of the other Defendant, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendant.

**IV.**

**FACTUAL BACKGROUND**

12. Plaintiff was employed by TESLA from approximately October 2020 until approximately March, 2021. During his employment with Defendant, Plaintiff occupied a non-exempt position as an Installer.

13. During the liability period, Defendant implemented policies and practices which resulted in Plaintiff and Non Exempt Employees working off the clock and without compensation. For instance, before clocking in, Plaintiff and Non-Exempt employees were required to attend safety meetings prior to clocking in to begin work. Plaintiff was not compensated for the work performed "off the clock" prior to the scheduled start of the shift. Furthermore, Defendant required Plaintiff and Non-Exempt employees to undergo numerous hours of training off the clock. Plaintiff was not compensated for this work performed "off the clock".

14. During the liability period, due to the work load requirements and time constraints imposed by Defendant during each shift, Plaintiff and Class Members were required to work in excess of five (5) hours without a minimum, uninterrupted thirty (30) minute meal period and were not compensated one (1) hour of pay at their regular rate of compensation for each workday that a compliant meal period was not provided, in violation of California labor laws, regulations and IWC Wage Order. For instance, Plaintiff's meal periods were interrupted and, in some circumstances, taken after working at least five hours due to the requirements of the roofing project he was working on at that time.

15. During the liability period, Defendant failed to pay Plaintiff and Non-Exempt employees their regular rate of pay when Plaintiff and Non-Exempt employees worked overtime hours and received non-discretionary bonus earnings. Plaintiff and Non-Exempt employees regularly worked approximately twenty (20) hours of overtime each week.

16. Defendant have also failed to maintain accurate itemized records reflecting total hours worked and have failed to provide Non Exempt Employees with accurate, itemized wage statements reflecting total hours worked and appropriate rates of pay for those hours worked.

17. Defendant required Plaintiff and Non-Exempt employees to use their personal cell phones to download and view roof schematics, to communicate with supervisors and employees, to clock in and out, and to keep track of working hours and scheduling. Furthermore, Defendant required Plaintiff and Non-Exempt employees to use their personal home computers and personal home internet services to download or stream training videos. Plaintiff and on information and belief Non-Exempt employees were not reimbursed for these expenses.

18. Plaintiff is informed and believes, and based thereon alleges, that Defendant currently employ and during the relevant period have employed over one hundred (100) employees in the State of California in non-exempt hourly positions.

19. Non-Exempt Employees employed by TESLA, at all times pertinent hereto, have been non-exempt employees within the meaning of the California Labor Code, and the implementing rules and regulations of the IWC California Wage Orders.

## V.

## CLASS ACTION ALLEGATIONS

20. Plaintiff seeks to represent a Class comprised of and defined as: All employees who are or were employed by TESLA in the state of California as hourly non-exempt employees within four (4) years prior to the date this lawsuit is filed ("liability period") until resolution of this lawsuit (collectively referred to as the "Class" and/or Class Members").

21. Plaintiff also seeks to represent Subclasses which are composed of persons satisfying the following definitions:

a. All Class Members employed by TESLA in the state of California as

hourly non-exempt employees and were not accurately and fully paid all lawful wages owed to them including proper overtime compensation and/or minimum wages for all their hours worked;

b. All Class Members employed by TESLA in the state of California as hourly non-exempt employees who, within the liability period, have not been provided an uninterrupted 30-minute meal period when they worked over five hours in a work shift and were not provided compensation in lieu thereof;

c. All Class Members employed by TESLA in the state of California as hourly non-exempt employees who, within the liability period, were not provided with accurate and complete itemized wage statements;

d. All Class Members employed by TESLA in the state of California who, within the liability period, were not timely paid all wages due and owed to them during their employment with Defendant; and

e. All Class Members employed by TESLA in the state of California who, within the liability period, were not timely paid all wages due and owed to them at their time of termination with Defendant.

22. Plaintiff further seeks to represent a subclass for all employees of TESLA in the state of California who, within the liability period, did not receive full reimbursement for employee expenses ("Expense Reimbursement Class").

23. Plaintiff reserves the right under Rule 3.765, California Rules of Court, to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

24. This action has been brought and may properly be maintained as a class action under the provisions of section 382 of the Code of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**A. Numerosity**

25. The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that Defendant currently employ,

and/or during the relevant time period employed, approximately over 100 Non-Exempt Employees in California who are or have been affected by Defendant' unlawful practices as alleged herein.

**B. Commonality**

26. There are questions of law and fact common to the Class predominating over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i. Whether Defendant violated Labor Code §§ 510, 1194 and applicable IWC Wage Orders by failing to pay all earned wages including overtime compensation to Non-Exempt Employees who worked in excess of eight (8) hours in a workday and/or more than forty (40) hours in a workweek;

ii. Whether Defendant also violated Labor Codes sections 200, 1194, and 1197 for failing to pay minimum wages for time spent under the Defendant' control and working "off the clock" without pay;

iii. Whether Defendant violated Labor Code §§ 226.7, 512 and applicable IWC Wage Order by failing to provide statutorily compliant 30-minute meal periods to Non-Exempt Employees on days in which they worked more than 10 hours and failing to compensate said employees one hour's wages in lieu of meal periods;

iv. Whether Defendant violated Labor Code § 2802 and applicable IWC Wage Orders for failing to indemnify employees for the expenditures incurred in the performance of their job duties;

v. Whether Defendant violated Labor Code § 226 and applicable IWC Wage Orders by failing to, among other violations, maintain accurate records of Non-Exempt Employees' earned wages, work periods, meal periods and deductions;

vi. Whether Defendant violated § 210 of the Labor Code by failing to pay all earned wages and/or premium wages due and owing when such wages were due and payable;

vii. Whether Defendant violated section 17200 *et seq.* of the Business and Professions Code and Labor Code sections §§ 201, 202, 203, 204, 210, 221, 225, 226, 226.7, 510, 512,

1194, 1199, 2802 and applicable IWC Wage Orders, violation of which constitutes a violation of fundamental public policy;

**C. Typicality**

27. The claims of the named Plaintiff are typical of the claims of the Class. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by Defendant' common course of conduct in violation of California laws, regulations, and statutes as alleged herein.

**D. Adequacy of Representation**

28. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Counsel who represents Plaintiff is competent and experienced in litigating large employment class actions.

**E. Superiority of Class Action**

29. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each member of the Class has been damaged and is entitled to recovery by reason of Defendant' unlawful policy and/or practice herein complained of.

30. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VI.
## CAUSES OF ACTION

### First Cause of Action

Failure to Pay Lawful Wages Including Overtime and Minimum Wage
(Lab. Code §§ 510, 1194, 1199)
(Against All Defendant)

31. Plaintiff repeats and incorporates herein by reference each and every allegation set forth above, as though fully set forth herein.

32. During the liability period, Defendant' policies and/or practices resulted in Plaintiff and Non-Exempt Employees working off the clock and in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek without receiving the proper compensation at the rate of time and one-half (1 1/2) of such employee's regular rate of pay.

33. As alleged herein, during the statutory liability period, Defendant' policies and/or practices resulted in Plaintiff and Non-Exempt Employees not receiving minimum wages for time spent working "off the clock" while subject to the control of Defendant all without pay. Labor Code § 1197 provides that employees are to be paid minimum wage for each hour worked.

34. As a result of the unlawful acts of Defendant, Plaintiff and the Class he seeks to represent have been deprived of compensation for all earned wages including minimum wage and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs, pursuant to Labor Code section 1194 .

35. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**Second Cause of Action**
Failure to Provide Lawful Meal Periods
Or Compensation in Lieu Thereof
(Lab. Code §§ 226.7, 512, IWC Wage Orders)
(Against All Defendant)

36. Plaintiff repeats and incorporates herein by reference each and every allegation set forth above, as though fully set forth herein.

37. As alleged herein, by failing to provide 30-minute uninterrupted meal periods for days on which Non-Exempt employees work(ed) work periods more than 5 hours and failing to provide compensation for such statutorily non-compliant meal periods, Defendant violated the provisions of Labor Code § 512 and applicable IWC Wage Orders.

38. By failing to record and maintain adequate and accurate time records according to sections 226 and 1174(d) of the Labor Code, Defendant have injured Plaintiff and Class Members and made it difficult to calculate the unpaid meal period compensation due Plaintiff and Class Members.

39. As a result of the unlawful acts of Defendant, Plaintiff, and the Class he seeks to represent, have been deprived of premium wages in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest and penalties thereon under Labor Code § 226.7.

40. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**Third Cause of Action**
Failure to Reimburse Employee Expenses
(Lab. Code § 2802)
(Against All Defendant)

41. Plaintiff repeats and incorporates herein by reference each and every allegation set forth above, as though fully set forth herein.

42. As alleged herein, by their policy of requiring Plaintiff and the "Expense Reimbursement Class" to purchase training courses and materials and failing to reimburse Plaintiff and the "Expense Reimbursement Class" for those purchases, Defendant willfully violated the provision of Labor Code § 2802 and IWC applicable Wage Orders.

43. As a result of the unlawful acts of Defendant, Plaintiff and the Class he seeks to represent are entitled to recovery of full amount of expenses incurred plus interest, attorneys' fees, and costs, under Labor Code § 2802.

44. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**Fourth Cause of Action**
Failure to Timely Pay Wages During Employment
(Lab. Code § 204)
(Against All Defendant)

45. Labor Code § 204 requires that all wages are due and payable twice in each calendar month. The wages required by Labor Code §§ 226.7, 510, 1194, 1197 and other sections became due and payable to Plaintiff and Class Members in each month that he or she was not paid all lawful wages owed or provided with lawful meal period or rest period to which he or she was entitled. Defendant violated Lab. Code § 204 by failing to pay said wages when they were due and payable.

46. Labor Code section 210 (a) provides that "In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5, shall be subject to a penalty as follow:

(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.

(2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

47. As a result of the unlawful acts of Defendant alleged herein, Plaintiff and the Class he seeks to represent have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest and penalties.

48. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**Fifth Cause of Action**
Failure to Timely Pay Wages Due at Termination
(Lab. Code §§ 201-203)
(Against All Defendant)

49. Plaintiff repeats and incorporates herein by reference each and every allegation set forth above, as though fully set forth herein.

50. Sections 201 and 202 of the California Labor Code require Defendant to pay its employees all wages due within 72 hours of termination of employment. Section 203 of the Labor Code provides that if an employer willfully fails to timely pay such wages the employer must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages.

51. As alleged herein, affected class members are entitled to compensation for all forms of wages earned, including, overtime compensation, minimum wage, correct sick pay wages and compensation for non-provided rest and meal periods but to date have not received such compensation therefore entitling them Labor Code section 203 penalties.

52. More than 30 days have passed since Plaintiff and affected Class Members have left Defendant' employ, and on information and belief, have not received payment pursuant to Labor Code § 203. As a consequence of Defendant's willful conduct in not paying all earned wages, certain Class Members are entitled to 30 days' wages as a penalty under Labor Code section 203 for failure to pay legal wages.

53. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**Sixth Cause of Action**
Knowing and Intentional Failure to Comply With Itemized Employee Wage Statement Provisions
(Lab. Code § 226(b))
(Against All Defendant)

54. Plaintiff repeats and incorporates herein by reference each and every allegation set forth above, as though fully set forth herein

55. Section 226(a) of the California Labor Code requires Defendant to itemize in wage statements all deductions from payment of wages and to accurately report total hours worked by Plaintiff and the members of the proposed class. IWC Wage Orders require Defendant to maintain time records showing, among others, when the employee begins and ends each work period, meal periods, split shift intervals and total daily hours worked in an itemized wage statement, and must show all deductions and reimbursements from payment of wages, and accurately report total hours worked by Plaintiff and the members of the proposed class. On information and belief, Defendant have failed to record all or some of the items delineated in Industrial Wage Orders and Labor Code § 226.

56. Plaintiff and Class Members have been injured by Defendant' actions by rendering them unaware of the full compensation to which they were entitled under applicable provisions of the California Labor Code and applicable IWC Wage Orders.

57. Pursuant Labor Code § 226, Plaintiff and Class Members are entitled up to a maximum of $4,000.00 each for record-keeping violation.

58. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**Seventh Cause of Action**
Violation of Unfair Competition Law
(Bus. & Prof. Code, §§ 17200-17208)
(Against All Defendant)

59. Plaintiff repeats and incorporates herein by reference each and every allegation set forth above, as though fully set forth herein.

60. Business & Professions Code Section 17200 provides:

> As used in this chapter, unfair competition shall mean and include any ***unlawful***, ***unfair*** or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.) (Emphasis added.)

61. Defendant's violations of the Labor Code and Wage Order provisions set forth above constitute unlawful and/or unfair business acts or practices.

62. The actions of Defendant, as alleged within this Complaint, constitute false, fraudulent, unlawful, unfair, fraudulent and deceptive business practices, within the meaning of Business and Professions Code section 17200, *et seq*.

63. Plaintiff and Class Members have been personally aggrieved by Defendant's unlawful and unfair business acts and practices alleged herein.

64. As a direct and proximate result of the unfair business practices of Defendant, and each of them, Plaintiff, individually and on behalf of all employees similarly situated, is entitled to restitution of all wages which have been unlawfully withheld from Plaintiff and members of the Plaintiff Class as a result of the business acts and practices described herein.

65. WHEREFORE, Plaintiff and the Class he seeks to represent request relief as described herein and below.

**VII.**

**PRAYER**

WHEREFORE, Plaintiff prays for judgment as follows:

1. That the Court determine that this action may be maintained as a class action;

2. For compensatory damages in an amount according to proof with interest thereon;
3. For economic and/or special damages in an amount according to proof with interest thereon;
4. For premium wages pursuant to Labor Code §§ 226.7 and 512;
5. For premium pay and penalties pursuant to Labor Code § 203, 204;
6. For attorneys' fees, interests and costs of suit under Labor Code §§ 226, 1194, 2802;
7. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

**Dated: March 3, 2022**

**JAMES HAWKINS, APLC**

James R. Hawkins, Esq.
Isandra Y. Fernandez, Esq.
Kacey E. Cook, Esq.

Attorneys for Plaintiff
Paul Kirk Polson

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
James Hawkins, SBN 192925
Isandra Fernandez, SBN 220482; Kacey E. Cook, SBN337905
JAMES HAWKINS APLC
9880 Research Dr., Suite 200 Irvine, CA 92618
TELEPHONE NO.: (949)387-7200 FAX NO.: (949) 387-6676
ATTORNEY FOR (Name): Paul Kirk Polson

FOR COURT USE ONLY

FILED
2022 MAR -4 A 10: 45
KATE BIEKER
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA
BY C. JACALA, DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
Polson v. Tesla Energy Operations, Inc.

**CIVIL CASE COVER SHEET**

- [x] Unlimited (Amount demanded exceeds $25,000)
- [ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**

- [ ] Counter
- [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: C22-00412
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [x] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [ ] Large number of separately represented parties
   - b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [x] Substantial amount of documentary evidence
   - d. [x] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify)*: 7
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 3, 2022
Kacey E. Cook, Esq.
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
COPY
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA 94553

PAUL K POLSON VS TESLA ENERGY

MSC22-00412

NOTICE OF ASSIGNMENT TO DEPARTMENT THIRTY-NINE FOR CASE MANAGEMENT DETERMINATION

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION SHEET, AND A BLANK CASE MANAGEMENT STATEMENT ARE TO BE SERVED UPON ALL OPPOSING PARTIES, ALL PARTIES SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT.

1. This matter has been assigned to Department 39, Judge E. Weil presiding, for all purposes; Department 39 is designated as the complex litigation department of the Court and as such (a) hears all cases wherein a designation of complex case has been made and (b) conducts hearings, in cases that this court determines, on a preliminary basis may be complex, to determine whether the case should remain in the complex litigation program.

2. All counsel are required to appear in Dept. 39 on 06/03/22 at 8:30 a.m.
   (a) If the case has been designated as complex, and no counter-designation has been filed, the Court will hold its first case management conference at that time.
   (b) If the case has been assigned to Department 39 on a preliminary basis the Court will hold a hearing to determine if the matter is, or is not, complex. If the matter is determined to be complex, the Court will then proceed with the first case management conference.

3. Each party shall file and serve a Case Management Conference Statement five (5) days before this hearing and be prepared to participate effectively in the Conference, including being thoroughly familiar with the case and able to discuss the suitability of the case for private mediation, arbitration or the use of a special master or referee.

4. Prior to the conference counsel for plaintiff shall meet and confer with counsel for each other party in an effort to precisely define the the issues in the case, discuss the possiblity of early mediation, the identities of possible other parties, and their respective plans for discovery.

5. Until the time of the conference the following INTERIM ORDERS shall be in effect:

A. Plaintiff shall diligently proceed in locating and serving each and every defendant. It is the Court's intention that each party be served in sufficient time to have entered an appearance within the time allowed by law and to attend the first conference.
B. All discovery shall be stayed excepting as all parties to the action might otherwise stipulate or the Court otherwise order.
C. No party shall destroy any writing or other evidence in its possession or under its control which bears in any way upon the matters which are the subject of this litigation.

D. Within the time for any party to file an answer or demurrer
   such party may alternatively file a notice of general appearance.
   In such event the time for filing of an answer or demurrer
   shall be extended to twenty (20) days following the first
   conference unless the Court shall, at that time, set a different
   schedule.

E. Counsel for each party shall do a conflict check to determine
   whether such counsel might have a possible conflict of interest
   as to any present or contemplated future party.

BY ORDER OF THE COURT